FRANCISCO A. ARRILLAGA, ETC., Appellant *v.* THE REGISTRAR OF PROPERTY OF BAYAMÓN, Respondent.

No. 1306.  Submitted February 1, 1954.—Decided April 30, 1956.

*Antonio Riera, A. Rivas Rosario, Alberto Ferrer, R. Cadilla Biscombe,* and *Félix Bello* for appellant. The Registrar appeared by brief.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

A certified copy of a deed embodying a crop-loan contract entered into between the Banco Popular de Puerto Rico, represented by its vice president and manager, Ramón Magriñá, party of the first part, and the Land Authority of Puerto Rico, represented by its executive director, Francisco A. Arrillaga, party of the second part, was presented to the Registrar of Property of Bayamón for registration in the Registry of Agricultural Contracts of his jurisdiction, which comprises, *inter alia*, the municipal districts of Toa Baja, Dorado, Toa Alta, Vega Baja, and Vega Alta. Arrillaga also appeared in his capacity as duly authorized agent of 83 proportional-profit farms created under the provisions of Title IV of the Land Authority Act of Puerto Rico—No. 26 of April 12, 1941 (Sess. Laws, p. 388), as amended—which were included in the contract in question as agricultural debtors.

Twenty-two out of the 83 proportional-profit farms included in the contract are situated in the municipal districts of Toa Baja, Toa Alta, Dorado, Vega Baja, and Vega Alta; and it was for the registration in the Registry of Agricultural Contracts of those 22 farms within his jurisdiction that the contract in question was presented to the Registrar and the internal-revenue stamps in the amount of $349.75 deposited as fees payable for such registration. The Registrar suspended the registration of the document by means of the following note:

"The registration of this document is suspended as to the 22 farms within the jurisdiction of this Registry, on the ground that the amount of $426.75 for registration fees has not been deposited as required by § 11 of Act No. 167, approved May 14, 1943 (Sess. Laws, p. 594), inasmuch as the loan which it secures

is for $1,658,930, as it appears from clauses 7 and 29 of the said document. In the meantime, pursuant to the provisions of Act No. 39 of April 23, 1928 (Sess. Laws, p. 232), a cautionary notice for 120 days is entered on the margin of the entry of presentation 167 of Book 30."

Petitioner urges that we reverse this note and alleges that the fees deposited by him in the Registry for the desired registration are those prescribed by law.

In support of his note, the Registrar argues that the basis for computing the registration fees of the contract as to the 22 farms of his jurisdiction, is the total amount of the crop loan made by the Banco Popular to the Land Authority, namely, the sum of $1,658,930; that according to § 11 of the Act of March 10, 1910, as amended by Act No. 167 of May 14, 1943,[1] the fees payable on that contract totaled $416.25; and that, in addition, since the registration comprises 22 farms, the petitioner is required to pay 50 cents for each of the 21 concise registrations which must be made for the remaining 21 farms pursuant to the said § 11 of the Act and its amendments,[2] wherefore the total amount of the legal fees payable is $426.75.

■ We do not agree with the Registrar. In computing the fees required, he reckoned in the first place from a wrong premise. By virtue of the crop-loan contract herein involved, the Land Authority borrowed from the Banco Popular the sum of $1,658,930 in order to finance its two sugar factories and secured such loan by an industrial share in the sugar

---

[1] The pertinent part of this section provides:

"When the amount of the contract exceeds $1,000, $2.00 shall be collected for the first $1,000, and $0.25 additional for each $1,000 or fraction of $1,000."

[2] This section in its pertinent part provides:

"For each concise annotation or marginal note which must be made, $0.25 shall be paid when the amount of the loan does not exceed $1,000; and $0.50, when it exceeds $1,000; *Provided*, That when the crop-loan contract is entered in more than two books because the farms are located in different municipalities, fees will be collected for one extensive annotation and the others concise."

produced by its two factories—Central Cambalache in Arecibo, and Central Plazuela in Barceloneta—both of which are within the jurisdiction of the Registry of Agricultural Contracts of Arecibo. It is in that Registry and not in that of Bayamón where the fees for recording therein the crop loan contract, as to the loan of the Land Authority, are payable.

█ Each of the 83 proportional-profit farms organized by the Land Authority also borrowed, for financing purposes, and secured by its cane, a specific sum which in the contract —clause 8 of the deed—is expressly designated as "principal." The sum of the loans of the 22 farms within the jurisdiction of the Registry of Agricultural Contracts of Bayamón is $1,390,123.48. And the total amount of the loans of the 83 farms comprised in the contract, as it appears from the said contractual clause, is $5,341,070, as "principal." The basis, therefore, for computing the fees required for the registration of the contract in the Registry of Agricultural Contracts of Bayamón, as to the 22 farms of its jurisdiction, is $1,390,123.48, which is the sum of the crop-loan contracts secured by the 22 farms.

The respondent Registrar shall collect, pursuant to law, the following fees: 25 cents for the entry of presentation; $2 for the first $1,000 of the amount of the crop loan of the 22 farms corresponding to the Registry of Agricultural Contracts of Bayamón; $347.50 for the balance of $1,389,123.48, at the rate of 25 cents for each additional $1,000 or fraction thereof, or a total of $349.75, which is precisely the amount of internal-revenue stamps deposited by petitioner upon presentation in the registry of the contract in question. No fees may be collected on the 21 concise annotations after the contract is recorded. Under Act No. 139 of May 13, 1943 (Sess. Laws, p. 428), which amended §§ 6, 7, and 14 of the Act of March 10, 1910, only one annotation is made in the Registry of Agricultural Contracts, and that

is the only one, regardless of the number of farms comprised in the document.[3] Act No. 139 did, in fact, reform the system of annotation of agricultural contracts. After having made the one single entry, the Act refers the interested party to the document itself which embodies the contract, a duplicate copy of which is numbered and filed in the record of agricultural contracts. Such contract is an integral part of the annotation itself, a requirement which by express provision of the law is clearly set forth in the annotation.

Confusion may arise from the fact that Act No. 167 *supra*, which was to take effect 90 days after its approval and which amended the last paragraph of § 11(*b*) of the Act of March 10, 1910, as so far amended, so that its text read as recited in footnote 2, was approved on May 14, 1943, or one day after the approval of Act No. 139 which, by reason of its immediate operation, went into effect on May 13, 1943.

However, if the system of a single annotation adopted by the reformation of Act No. 139 is to prevail, the provision in question is rendered ineffective, for once it is rendered unnecessary to make a concise annotation or marginal note, no fees are collectible thereon. The provision of the law bearing on the single annotation, which is a reform law in the registration procedure, prevails over the provision of the law bearing on the collection of fees which, besides being an act of schedule of fees, becomes unnecessary.

The decision will be set aside and the Registrar is ordered to properly record the crop-loan contract which is the object of this appeal.

---

[3] Section 7 of the Act *supra* specifies the content of the entry of presentation as well as of the annotation itself, and provides, among other things, that the books of the Registry of Agricultural Contracts shall also have, "at the end, a printed index with a sufficient number of pages, and columns in which to enter the names of the contracting parties, the place where the farm is located, the number of cuerdas, and the page on which the contract has been entered."

Further on, in specifying how the annotation shall be made in the Registry, it provides: "Said annotation shall be made *by listing the farm or farms the object of the contract. . . .*"